IN THE UNITED STATE DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:21-cv-61653-KMM

KEVIN FRYE

      Plaintiff,

v.

T-MOBILE USA, INC.

      Defendant.

_____/

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL ARBITRATION**

## I.      INTRODUCTION

Mr. Frye does not dispute he had a contract with Metro since opening his account in 2011, and that all of his claims arise from third party hackers' alleged interference with his Metro service in 2021.  Although he now says that he was not aware of the arbitration requirement in his Metro service agreement, he does not dispute that he was provided notice of the arbitration requirement over the parties' decade-long relationship through the informational sheet provided to him when he activated his service, arbitration notices used to seal his devices, and regular text messages referring him to Metro's T&Cs.  He similarly does not and cannot dispute that his claims each fall within the scope of the arbitration requirement in the T&Cs.

In an attempt to skirt his obligation to arbitrate, Mr. Frye asets a hodge-podge of speculation and unfounded claims of fraud, unconscionability, and public policy and constitutional violations.  Each of Mr. Frye's general arguments regarding the unenforceability of the T&Cs as a whole should be decided by the arbitrator based on the undisputed delegation provision in the T&Cs and well-established severability rules.  Even if the Court considers Mr. Frye's arguments, they all fail on their merits and because Mr. Frye did not support them with any competent evidence.

The Court should compel Mr. Frye to resolve his claims against Metro in binding arbitration based on his service agreement, and stay this action pending arbitration.

## II.     ARGUMENT

### A.     Mr. Frye Should Be Compelled to Arbitrate His Claims.

Mr. Frye does not dispute that the FAA applies to the pending Motion.  (Mot. 5-6.)  The FAA begins with the premise that there is "nothing inherently unfair or oppressive about arbitration clauses" as Mr. Frye suggests.  *See Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986).  Under the FAA, Mr. Frye is required to arbitrate his claims because he (a) "entered into a written arbitration agreement" with Metro and (b) "the claims before the court fall within the scope of that agreement."  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1995 (11th Cir. 2008).  When those threshold elements are satisfied, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The Opposition fails to refute Metro's evidence on this limited inquiry.

### 1.     Mr. Frye Agreed to Be Bound by the Metro Arbitration Agreement.

Mr. Frye admits in his Verified Complaint that he "entered into a contract with Metro" (Compl. ¶ 10) and does not dispute forming a contract with Metro in his Opposition.  (*See* Opp'n 15 ("when the Plaintiff entered the contract with T-Mobile, as a lay person … it was not conceivable that arbitration could be used as a remedy for something other than bill disputes or services issues"—even though the T&Cs require arbitration of "all disputes").)

Rather than dispute the existence of the agreement, Mr. Frye denies knowing what was contained in his Metro contract.  He submitted an unsworn "affidavit" on "information and belief" stating that he did not know about the arbitration requirement in his Metro contract.  (*See* Frye Aff. ¶¶ 2-3 ("at no time was I aware of the arbitration terms or their contract stated that arbitration was mandatory … When I talked to representatives from [Metro] no one ever made me aware that I was waiving legal rights").)  ***Courts have consistently rejected this precise argument that a party may avoid a contractual obligation because he was not aware of the requirement or that it was not expressly explained to him.***  *See Falcon v. CarMax Auto Superstores, Inc.*, 2018 U.S. Dist. LEXIS 84909, at *9 (S.D. Fla. May 18, 2018) (a party to an agreement "cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions"); *Kendall Imps., LLC v. Diaz*, 215 So. 3d 95, 101 (Fla. Dist. Ct. App. 2017) ("the fact the employee did not read or explain the contractual documents, which contained an arbitration

clause, to Ms. Benton was insufficient to invalidate the documents or to constitute a defense to them"); *Fla. Holdings III, LLC v. Duerst*, 198 So. 3d 834, 840 (Fla. Dist. Ct. App. 2016) ("It is settled that a party should not be permitted to avoid the consequences of a contract … because he or she elected not to read and understand its terms … ."); *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So. 2d 500, 504 (Fla. Dist. Ct. App. 2003) (a party cannot avoid a contract by claiming he did not "understand that the agreement contained an arbitration provision … unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it").

The rest of the affidavit appears calculated to suggest that Mr. Frye was also unaware of the sticker on the box of his Metro phone informing him of the arbitration requirement because a Metro employee "set up the phone" for him.  (*See* Frye Aff. ¶ 3-4.)  But Mr. Frye's vague testimony does not state that he did not see the arbitration notice used to seal his devices, or suggest the employee prevented him from or viewing the sticker.  This notice of the T&Cs through the Metro sticker is no different from arbitration provisions in "shrinkwrap agreements" that the Court routinely enforces.  For instance, in *TracFone Wireless, Inc. v. Pak China Grp. Co.*, 843 F. Supp. 2d 1284 (S.D. Fla. 2012), the Court enforced a phone carrier's shrinkwrap contract printed on the packaging of its phone stating in part that "[b]y purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service in the enclosed user guide."  *Id.* at 1298-99.  Likewise, here, the sticker stated that "By purchasing or opening this package, activating, using or paying for Metro … service you agree to the Metro … Terms and Conditions … which provide for arbitration of disputes … ."  (Norris Decl. ¶ 24.)

The Opposition offers no other evidence[1] purporting to refute Mr. Frye's notice of and agreement to the T&Cs.  To be clear, Mr. Frye does not dispute that Metro provided him with a "Metro Information Sheet" explaining in English and Spanish that Mr. Frye would be bound by the T&Cs by activating and using Metro's service and that Metro "requires Arbitration of Disputes unless you opt-out."  (Norris Decl.¶¶ 20-22, Ex. H at p. 1.)  Mr. Frye does not dispute that Metro sent him a text message in English and Spanish notifying him of the T&Cs and

---

[1] Mr. Frye offers speculation about the lack of "video evidence" further showing his assent to the terms of service.  (Opp'n 1, 16.)  Mr. Frye fails to explain what this presumed video surveillance of a standard customer interaction at a store would show.  Mr. Frye has been a Metro customer since March 14, 2011, and Metro does not and cannot keep video of every customer interaction at every retail store for over a decade.

directing him to the website with the T&Cs, including on February 10, 2020 when he upgraded his service.  (*Id.* ¶ 26.)  Mr. Frye does not dispute he activated, used, and upgraded his device and paid for his Metro service over a period of nearly a decade without opting out of arbitration. (*Id.* ¶¶ 28-29, 37.)  As explained in every version of the T&Cs—referenced in the information sheet, text message, box sticker, and Metro's website—a customer is bound by the T&Cs by manifesting his assent in that manner.  (*See id.* ¶ 27, Ex. F.)

   Consumer arbitration agreements based on this type of notice and conduct are routinely enforced by the Court absent competent evidence refuting the agreement.  *See Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320 (S.D. Fla. 2006) (enforcing AT&T's terms and conditions based on customer's use of service after notice of arbitration requirement); *Smith v. Comcast Cable Commc'ns Mgmt., LLC*, 2016 U.S. Dist. LEXIS 111716, at *5-6 (S.D. Fla. Aug. 22, 2016) (rejecting bare assertions regarding not having seen arbitration requirement unsupported by evidence given evidence that notice was provided); *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) ("Plaintiffs, meanwhile, accepted the terms and conditions of the contract by purchasing and accepting passage … even when the passenger did not actually read those provisions."); *Citi Cars, Inc. v. Cox Enters.*, 2018 U.S. Dist. LEXIS 42544, at *16 (S.D. Fla. Jan. 22, 2018) (Moore, J.) (enforcing terms and conditions containing arbitration provision because plaintiff demonstrated assent by using defendant's services).  Here, Mr. Frye did not even deny that the agreement to arbitrate was reached, let alone provide competent evidence in support.  He merely quibbles regarding his actual knowledge of the specific terms the agreement contained.  (Frye Aff. ¶¶ 1-4.)  He does not and cannot contend that Metro prevented him from reviewing the public T&Cs that it repeatedly referenced in its communications with Mr. Frye over their decade-long relationship.

   Given his inability to dispute his assent to the T&Cs, Mr. Frye claims he entered into his contract with Metro based on "fraud in the execution."  (Opp'n 16-17.)  Mr. Frye provides no evidence supporting his theory of fraud and there is no such allegation in his Verified Complaint. The assertion fails for that reason alone.  *See Rainbow Invs., Inc. v. Super 8 Motels, Inc.*, 973 F. Supp. 1387, 1389-90 (M.D. Ala. 1997) ("The court should not defer the question of arbitrability to an arbitrator merely because a party, with the desire to avoid arbitration, avers, for example, that the arbitration clause itself was fraudulently induced.  The court must be presented with evidentiary facts that tend to show the existence of grounds at law or in equity to support the

revocation of the arbitration agreement.").  Indeed, the only explanation of the claim is again a recitation that Mr. Frye "was not aware" that he would be giving up certain rights by entering into the T&Cs.  (Opp'n 16.)  As explained in the cases cited above, that excuse is insufficient as a matter of law to avoid the obligation to arbitrate.

Mr. Frye should not be allowed to accept the benefits of his decade-long service contract with Metro, including industry-leading prepaid phone rates presently starting at around $30 a month, while avoiding the industry standard contractual requirement to efficiently arbitrate disputes arising from the provision of that low-cost service.

### 2.     Mr. Frye's Claims Are Subject to Arbitration.

Mr. Frye does not expressly dispute that his claims relating to Metro's purported failure to safeguard his phone account fall within the scope of Metro's broad arbitration agreement. (Mot. 12.)  His Opposition, however, cites *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 635 (Fla. 1999)—a case regarding the scope of an arbitration provision—in connection with Mr. Frye's unconscionability analysis.  (Opp'n 8-9.)  The issue in that case was whether an "arbitration provision in a sales agreement for a home did not require arbitration of a wrongful death claim based on negligence where … the tort action did not bear a significant relationship to the contract."  *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 758 (Fla. 2013).  As the Florida Supreme Court has since held, *Seifert* has no application where there exists a "significant relationship … between the contract and the allegations in the complaint."  *Id.*  Likewise, here, the T&Cs cover "any and all claims or Disputes between [Metro] and [Mr. Frye], in any way related to or concerning the Agreement, [Metro's] Privacy Policy, [Metro's] Services, [or] devices or products" (Norris Decl. ¶ 30) and all of Mr. Frye's claims are based on the alleged failure to safeguard his Metro service and device (Compl. ¶¶ 88-153).  *Seifert* does not apply.

Because the parties entered into an arbitration agreement and Mr. Frye's claims fall within its scope, the Court should compel arbitration.  *See Lambert*, 544 F.3d at 1995.

### B.     Mr. Frye's Arguments in Opposition Each Fail.

Given his inability to dispute the central issues relevant to the Motion, Mr. Frye devotes most of his Opposition to ancillary arguments about the purported unenforceability or unconscionability of the Metro T&Cs.  None provides a basis for avoiding arbitration.

1.      **The T&Cs Delegate Arbitrability Challenges to the Arbitrator.**

Mr. Frye primarily argues in his Opposition that the T&Cs are unconscionable (Opp'n 4-9) or against public policy (*id.* at 15) or violate his "constitutional rights" (Opp'n 15-16).[2]  But as explained in the Motion and nowhere addressed in the Opposition, all versions of Metro's T&Cs[3] incorporate arbitral rules of AAA and JAMS, which the Eleventh Circuit has held constitutes "clear and unmistakable evidence that the parties ... intended to delegate questions of arbitrability to the arbitrator."  (Mot. 11 (quoting *JPay, Inc. v. Kobel*, 904 F.3d 923, 938 (11th Cir. 2018)).)

The delegation requires the arbitrator to decide Mr. Frye's general enforceability and unconscionability arguments.  In particular, as the Eleventh Circuit and this Court have repeatedly held, arguments relating to the unenforceability of the arbitration contract or arbitration provision as a whole are insufficient when the parties make a proper.  Most recently, in *Larsen v. Citibank FSB*, 856 F. App'x 238, 245 (11th Cir. 2021), the Eleventh Circuit rejected unconscionability arguments indistinguishable from the one made by Mr. Frye because it was not directed specifically to the delegation provision:

> Plaintiffs argue that the delegation clause is unconscionable and therefore unenforceable.  Because the Wells Fargo Agreement delegates issues of interpretation, scope, and enforceability to the arbitrator, we only retain jurisdiction over challenges directed specifically at that delegation.  Where a plaintiff's only challenge applies to the arbitration agreement more broadly, we leave those challenges to the arbitrator.  As the district court properly noted, "Plaintiffs do not identify any specific defect in the delegation clause and instead argue only that it is unconscionable for the same reasons' as the contract more generally."  Without Plaintiffs pointing to any specific deficiencies in the delegation clause, we find no

---

[2] The Opposition also includes speculation about, *e.g.*, what actions Metro "could have taken" to prevent SIM swap fraud by third party hackers (Opp'n 9-13), purported criminal conduct (*id.* at 17), and investigations or fines against Metro/T-Mobile relating to the disclosure of customer "location information" and a "data breach" having nothing to do with the present action (*id.* at 14-15, 17-18).  None of Mr. Frye's theories of misconduct by Metro are even alleged in his complaint, let alone supported by evidence or relevant to the pending Motion.  He relies entirely on speculation based on information from third-party webpages, which Metro will refute with evidence in arbitration at the appropriate time.

[3] Mr. Frye refers to another version of the T&Cs purportedly from February 15, 2020.  He does not identify any relevant difference in this version or why it controls over earlier versions when he first signed up for Metro or later versions put into place.  All versions of Metro's T&Cs contain the same relevant provisions, including the arbitration requirements.  (*See* Shrayer Decl., Ex. 1 at 7.)  The differences in that version appear to be non-substantive (*e.g.*, the agreement refers to "Metro by T-Mobile" rather than "MetroPCS").

reason to deem it unconscionable.  Plaintiffs may take up their challenges to the contract as a whole with the arbitrator.

*Id.* (citing *Rent-A-Center W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010)).

It is black-letter law in this circuit that if "a would-be plaintiff seeks to challenge an arbitration agreement containing a delegation provision, he or she must challenge the delegation provision directly" or else all such challenges must be decided by the arbitrator.  *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1149 (11th Cir. 2015) (compelling arbitration despite unconscionability arguments based on delegation clause:  "These allegations all address the validity of the underlying agreement and reflect the extent of Parnell's challenge.  At no point in his complaint does Parnell specifically challenge the parties' agreement *to commit to arbitration* the question of the enforceability of the arbitration agreement."); *accord Lichtman v. Bar Educ., Inc.*, 2021 U.S. Dist. LEXIS 187429, at *16 (M.D. Fla. Sep. 30, 2021); *Inferno Grp. Holdings, LLC v. 1000 Degrees Pizzeria Franchise, Inc.*, 2017 U.S. Dist. LEXIS 219925, at *16-17 (S.D. Fla. Nov. 27, 2017) (refusing to consider unconscionability challenge to arbitration provision including delegation clause when "Plaintiff does not even acknowledge the existence of the delegation clause").  Mr. Frye does not even acknowledge the delegation provision of the T&Cs let alone make an argument that it specifically does not apply.  The arbitrator should thus decide Mr. Frye's various enforceability arguments.

### 2.     Mr. Frye's Enforceability Challenges Are Severable.

Even without a valid delegation provision like in the T&Cs, any claim of unenforceability must be directed specifically at the arbitration clause as opposed to other unrelated portions of the arbitration contract.  Mr. Frye does not make any such challenge for the Court to decide.

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  "One type challenges specifically the validity of the agreement to arbitrate."  *Id.*  "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid."  *Id.*  "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance" because "an arbitration provision is severable from the remainder of the contract."  *Id.* at 445; *see, e.g.*, *Benoay v.*

*Prudential-Bache Secur., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986) ("Benoay's claims of adhesion, unconscionability, waiver of judicial remedies without knowledge, and lack of mutuality of obligation pertain to the contract as a whole, and not to the arbitration provision alone, then these issues should be resolved in arbitration"); *Mercury Telco Grp., Inc. v. Empresa*, 670 F. Supp. 2d 1350, 1356 (S.D. Fla. 2009) (arbitrator must decide fraud allegations directed at the arbitration contract as a whole).

Mr. Frye's challenges to the enforceability of the arbitration agreement relate entirely to collateral terms beyond the arbitration clause. In particular, he challenges the limitation of liability provisions restricting, *e.g.*, punitive damages and damages caused by third parties, pursuant to which Metro offered $30/month prepaid phone service. (Opp'n 5-9.) As he states in his Opposition, "Mr. Frye contends that the Agreement … is unenforceable in its entirety." (*Id.* at 8.) This attack on the contract as a whole has no bearing on the arbitration analysis.

In claiming these ancillary attacks prevent enforcement of the arbitration provision, Mr. Frye ignores the Supreme Court's severability doctrine and relies upon outdated and out-of-circuit authorities applying inapposite California law. (Opp'n 5-7.) Even in those cases, however, the party opposing arbitration attacked parts of the arbitration agreement. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 108 (2000) (challenging provision requiring payment of arbitration fees by employee/plaintiff); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173 (9th Cir. 2003) (challenging one-sided arbitration requirement only applying to employee/plaintiff's claims).

The arbitrator should decide Mr. Frye's claims regarding the enforceability of the collateral term, including his unconscionability, public policy, and fraud claims. *See Coleman*, 802 F.2d at 1352 ("Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract"). Indeed, even if certain provisions of the T&Cs were unenforceable, the remedy is to sever the term pursuant to the contract's severability provision (*see, e.g.*, Norris Decl., Ex. G at p. 134). *See Citi Cars*, 2018 U.S. Dist. LEXIS 42544, at *25 ("the Court finds that the Limitation of Liability Clause is severable … the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions"); *Distribuidora De Vehiculos S.A. v. John Deere Constr. & Forestry Co.*, 2012 U.S. Dist. LEXIS 202689, at *17 (S.D. Fla. June 13, 2012) ("Even if the objected-to-language is invalid, it is severable").

### 3.   Mr. Frye's Arbitrability Challenges Fail in Any Event.

Even if the Court were to consider the enforceability issues delegated to the arbitrator and subject to severance (it should not), Mr. Frye failed to prove the unenforceability of the T&Cs.

### a.   The T&Cs Are Not Unconscionable.

"A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013). "Under Florida law, to prevail on her defense that the Arbitration Agreement is unconscionable and therefore unenforceable, [Plaintiff] must establish that the Agreement is both procedurally and substantively unconscionable." *Echeverri v. P.S. Bus. Parks, L.P.*, 2014 U.S. Dist. LEXIS 194801, at *4 (S.D. Fla. Mar. 20, 2014). Mr. Frye failed to prove either.

The Metro T&Cs are not procedurally unconscionable. "The procedural component of unconscionability relates to the manner in which the contract was entered into." *Echeverri*, 2014 U.S. Dist. LEXIS 194801, at *4-5. Although "[i]t involves consideration of the relative bargaining power of the parties … [m]ere inequality in bargaining power … is not a sufficient reason to hold that arbitration agreements are [unenforceable]." *Id.* Mr. Frye provided no evidence supporting his claim of procedural unconscionability. He does not explain why he could not choose to use any of Metro's competitors operating in Florida. He also ignores that the T&Cs included an opt-out procedure that he did not utilize. (Norris Decl. ¶¶ 33, 37.) There is no potential for procedural unconscionability in these circumstances. *See Citi Cars*, 2018 U.S. Dist. LEXIS 42544, at *22-23; *Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1326 (M.D. Fla. 2017) ("[T]he existence of a meaningful right to opt-out of arbitration necessarily renders the arbitration clause … procedurally conscionable as a matter of law.").

The Metro T&Cs also are not substantively unconscionable. "A contract is substantively unconscionable if its terms 'are so outrageously unfair as to shock the judicial conscience.'" *Echeverri*, 2014 U.S. Dist. LEXIS 194801, at *4-5. "With regard to substantive unconscionability, the Eleventh Circuit has stated that 'there is nothing inherently unfair or oppressive about arbitration clauses.'" *Id.* (quoting *Coleman*, 802 F.2d at 1352). Likewise, "[t]here is nothing inherently shocking or unfair about limitation-of-liability provision. In fact, courts frequently enforce similar provisions." *CC Aventura, Inc. v. Weitz Co., Ltd. Liab. Co.*, 2009 U.S. Dist. LEXIS 94299, at *30 (S.D. Fla. Oct. 9, 2009); *accord Mt. Hawley Ins. Co. v.*

*Pallet Consultants Corp.*, 2009 U.S. Dist. LEXIS 56314, at *25 (S.D. Fla. June 25, 2009).  In general, "[t]he overarching policy in Florida is that unconscionability is a highly disfavored defense," *CC Aventura*, 2009 U.S. Dist. LEXIS 94299, at *28, and Mr. Frye has not submitted any evidence to meet his heavy burden.

>    **b.**    **The T&Cs Do Not Violate Public Policy.**

Mr. Frye similarly suggests the limitation of liability provisions are "void against public policy."  (Opp'n 4, 15.)  But he does not identify any public policy against enforcement of the arbitration provision or the limitation of liability provisions.  No such policy appears to exist. The FAA reflect an "emphatic federal policy in favor of arbitral dispute resolution."  *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011).  Likewise, "Florida public policy favors resolving disputes through arbitration" and "[a]ll doubts regarding the scope of an arbitration agreement must be resolved in favor of arbitration."  *Maguire v. King*, 917 So. 2d 263, 266 (Fla. Dist. Ct. App. 2005).  Limitation of liability provisions are also routinely enforced over public policy objections.  *See CC Aventura*, 2009 U.S. Dist. LEXIS 94299, at *28; *Cont'l Video Corp. v. Honeywell*, 422 So. 2d 35, 37 (Fla. Dist. Ct. App. 1982) ("We do not find that the contract [containing exculpatory provision] was against public policy.").

>    **c.**    **The T&Cs Do Not Violate Constitutional Rights.**

Mr. Frye suggests the provisions in the T&Cs violate his "constitutional rights" without identify the affected constitutional rights.  (Opp'n 15-16.)  He relies exclusively on *Seifert*, 750 So. 2d at 643, which referred to the right to trial by jury in dicta.  As explained above, that case involved inapposite circumstances of a party seeking arbitration of disputes having no relationship to the arbitration contract.  The case did not set forth any rule preserving a right to a jury in arbitration.  Any such rule would be preempted by the FAA.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 356 (2011) (any state requirement of "ultimate disposition by a jury" are the types of "rules aimed at destroying arbitration" preempted by the FAA).  A waiver of a jury trial is valid in connection with an arbitration agreement and does not raise any constitutional concern.  *See Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1372 (11th Cir. 2005) ("the party is not entitled to a jury trial" in arbitration).

>    **III.**    **CONCLUSION**

Metro respectfully requests the Court grant its Motion to Compel Arbitration and stay this action until the completion of arbitration proceedings.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: /s/ James H. Moon

    Matthew R. Tuchman
    Florida Bar No. 109297
    DAVIS WRIGHT TREMAINE LLP
    1301 K Street NW, Suite 500 East
    Washington, D.C. 20005
    Tel:  (202) 973-4200
    Fax:  (202) 973-4499

    James H. Moon (*pro hac vice*)
    Matthew C. Onyett (*pro hac vice*)
    DAVIS WRIGHT TREMAINE LLP
    865 South Figueroa Street, Suite 2400
    Los Angeles, CA 90017
    Tel:  (213) 633-6819
    Fax:  (213) 633-6899

    *Attorneys for Defendant T-Mobile USA, Inc.*
    *d/b/a Metro by T-Mobile*