UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-cv-61653-KMM

KEVIN FRYE,

    Plaintiff,

v.

T-MOBILE USA, INC.,

    Defendant.
                                       /

**ORDER ON MOTION TO COMPEL ARBITRATION**

THIS CAUSE came before the Court upon Defendant T-Mobile USA, Inc.'s ("Defendant" or "T-Mobile") Motion to Compel Arbitration. ("Mot.") (ECF No. 11). Plaintiff Kevin Frye ("Plaintiff") filed a response. ("Resp.") (ECF No. 30). Defendant filed a reply. ("Reply") (ECF No. 31). Defendant also filed a Notice of Supplemental Authority. ("Notice") (ECF No. 37). The Motion is now ripe for review.

**I.    BACKGROUND**[1]

In the Complaint, Plaintiff alleges that T-Mobile failed to safeguard and protect highly sensitive personal and financial information against "common, widely reported, and foreseeable attempts to illegally obtain such information." Compl. ¶ 1. Specifically, Plaintiff claims that as a result of T-Mobile's alleged misconduct "Plaintiff lost 1.91130741 [Bitcoin], with a current

---

[1] The background facts are taken from the Complaint, ("Compl.") (ECF No. 1), and accepted as true for purposes of ruling on the Motion. *Bacon v. McKeithen*, No. 5:14-CV-37-RS-CJK, 2014 WL 12479640, at *1 (N.D. Fla. Aug. 28, 2014) ("[The Court] must construe all allegations in the complaint as true and in the light most favorable to the plaintiff."). Additionally, the Court has taken background facts from the Declaration of James Moon, ("Moon Decl.") (ECF No. 11-1), and the Declaration of Hope Norris, ("Norris Decl.") (ECF No. 11-2), which are attached to Defendant's instant Motion.

estimated value in excess of $87,000 due to an account takeover scheme (also known as a "SIM-swap") which could not have occurred but for Defendant's intentional actions and negligent practices, as well as their repeated failure to adhere to federal and state laws." *Id*. ¶ 2. The Complaint asserts the following claims: (1) violation of the Federal Communication Act ("Count I"), (2) negligence ("Count II"), (3) gross negligence ("Count III"), (4) negligent hiring, retention, and supervision ("Count IV"), and (5) violations of the Computer Fraud and Abuse Act ("Count V"). *See generally* Compl.

As relevant for the purposes of the instant Motion, Plaintiff agreed to T-Mobile's Terms & Conditions ("T&Cs") on numerous occasions throughout the years while he used T-Mobile's services. *See* Norris Decl. ¶¶ 7, 9–10. Indeed, in the Complaint, Plaintiff acknowledges that he entered into a contract with T-Mobile. Compl. ¶ 10. It was T-Mobile's practice and procedure to send customers links to the T&Cs via SMS text messages and T-Mobile's records reflect that such a message was sent to Plaintiff as recently as February 10, 2020 when he upgraded his phone. Norris Decl. ¶¶ 25–26.

Included within the T&Cs is an arbitration agreement (the "Arbitration Agreement"), which states:

> **IMPORTANT: READ THIS AGREEMENT CAREFULLY. IT REQUIRES THE USE OF INDIVIDUAL ARBITRATION RATHER THAN JURY TRIALS OR CLASS ACTIONS TO RESOLVE DISPUTES.**

Norris Decl. ¶ 31(emphasis in original). Additionally, the Arbitration Agreement provides:

> Dispute Resolution and Arbitration. We each agree that, except as provided below, any and all claims or Disputes between you and us, in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products, will be resolved by binding arbitration. . . . "Dispute" shall be given the broadest possible meaning and shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement, including but not limited to: (1) all claims for relief and all theories of liability, whether based in contract, tort, statute, regulation, ordinance, fraud, or

2

>    misrepresentation; (2) all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver); (3) all disputes that arose before this Agreement; (4) all disputes that arise after the termination of this Agreement; and (5) all disputes that are the subject of a putative class action in which no class has been certified. . .  If you do not wish to be bound by this arbitration agreement, you must notify us of your desire to do so within 30 days of initiating Service, or, if you have never had the opportunity to opt out of arbitration, within 30 days of the date of the change notice giving you the opportunity[.]

*Id.* ¶ 32.[2] T-Mobile also seeks to make its customers aware of the mandatory arbitration provision by (1) sending all customers a "Metro Information Sheet" which includes a section that informs customers of the arbitration clause, (2) referring to the T&Cs and the arbitration provision in a customer's monthly bill, (3) placing a sticker on the boxes of T-Mobile devices, such as phones, that references the T&Cs and the arbitration provision, and (4) by providing the full T&Cs on its website. *Id.* ¶¶ 21, 22–25.

Now, Defendant moves to exercise its right under the Arbitration Agreement to request that the Court stay the above-captioned case pending the completion of arbitration. *See generally* Mot.

**II.     LEGAL STANDARDS**

The Federal Arbitration Act ("FAA") "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (other citations omitted). The FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules*

---

[2]  The Court has utilized a link provided in Plaintiff's Response to T-Mobile's T&Cs and has confirmed that the arbitration provision of the T&Cs is very similar, if not identical, to the language cited to in the Norris Declaration. *See* Resp. at 3 n.1 (citing https://web.archive.org/web/20200215233629/https://www.metrobyt-mobile.com/metropcs-terms-conditions-service). *Compare id.*, *with* Norris Decl. ¶ 32.

3

under which that arbitration will be conducted.'" *Id*. (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (emphasis in original)).

Where a party moves to compel arbitration, the FAA directs courts to "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

### III.  DISCUSSION

Defendant argues that the FAA applies to the Arbitration Agreement because a contract for telecommunication services affects interstate commerce. Mot. at 5–6. Defendant points out that courts across the country regularly enforce its arbitration agreement. *Id*. at 8. Defendant contends that Plaintiff agreed to be bound by the Arbitration Agreement on numerous occasions and reaffirmed his agreement through his payments. *Id*. at 9 (citing Norris Decl. ¶¶ 8–9, 22–24, 27–29). Defendant also notes that questions of arbitrability are properly delegated to the arbitrator, pursuant to the rules of the American Arbitration Association ("AAA"), which are expressly incorporated into the Arbitration Agreement. *Id*. at 10–11. Finally, Defendant contends that Plaintiff's claims fall within the broad scope of the Arbitration Agreement and this action should therefore be stayed pending arbitration. *Id*. at 12–13.

In response, Plaintiff contends that the T&Cs are unconscionable and should be void against public policy because: (1) the agreement was presented on a take-it-or-leave-it basis, and (2) Plaintiff had no opportunity to negotiate any term of the agreement. Resp. at 4. Plaintiff has submitted an affidavit in which states that he did not know about the arbitration provision within the T&Cs. Affidavit of Kevin Frye (ECF No. 30-2) ¶¶ 1–4. Plaintiff argues that Defendant has not shown that Plaintiff agreed to the T&Cs because Defendant did not produce video evidence of

him doing so, which he argues they "easily" could have done. *Id*. at 1. Plaintiff contends that the T&Cs indemnity provision is unconscionable, and the whole Arbitration Agreement is therefore unenforceable. *Id*. at 6. According to Plaintiff, if he is required to arbitrate this claim, he will be required to forego his entitlement to punitive damages and other damages he is entitled to under Federal Communications Act § 222. *Id*. at 7. Plaintiff's response also raises a host of arguments relating to the merits of this case that are not directed to whether this case should be arbitrated, such as: (1) identifying security measures that T-Mobile should have taken to prevent the theft of Plaintiff's Bitcoin, (2) noting solutions that T-Mobile could have utilized to prevent "SIM-swapping," (3) recounting an "FCC Proposed $91,630,000.00 Penalty to T-Mobile" relating to SIM-swapping, and (4) noting T-Mobile's employees have been involved in SIM-swapping since 2018. *Id*. at 12–15, 17–18. Finally, Plaintiff broadly argues that (1) Defendant's conduct is so problematic that public policy weighs heavily against arbitration, (2) Plaintiff has a constitutional right to a judicial forum that would be infringed by referral to arbitration, and (3) T-Mobile executed the Arbitration Agreement in fraud. *Id*. at 15–17.

In reply, Defendant first argues that Plaintiff has attempted to skirt his obligation to arbitrate by asserting "a hodge-podge of speculation and unfounded claims of fraud, unconscionability, and public policy and constitutional violations." Reply at 1. Defendant argues that Plaintiff's arguments regarding the unenforceability of the T&Cs as a whole should be decided by an arbitrator. *Id*. Defendant notes that courts have rejected the notion that a party can avoid contractual obligations by claiming not to be aware of them, including in circumstances where a party claims not to have seen a "shrink-wrap" sticker. *Id*. at 2. Defendant points out that, in any event, Plaintiff has not even attempted to refute other ways he was made aware of his agreement to the T&Cs, such as by having been provided with the "Metro Information Sheet," text messages

5

directing him to the T&Cs. *Id.* at 3–4. Defendant argues that Plaintiff's claim of "fraud in the execution" is unsupported by evidence and should not prevent arbitration. *Id.* at 4. Defendant asserts that Plaintiff's arguments that the T&Cs are unconscionable, against public policy, or contravene his constitutional rights, are all issues of arbitrability that should be submitted to the arbitrator. *Id.* at 6. To the extent that Plaintiff argues that the T&Cs are invalid in general, Defendant argues that the contract's validity must be submitted to an arbitrator because the arbitration provision is severable form the rest of the contract. *Id.* at 7–8. Finally, Defendant responds to the merits of Plaintiff's unconscionability, public policy, and constitutional arguments. *Id.* at 8–10.

To begin, the Court finds, and the Parties do not dispute, that the FAA applies to Defendant's Motion. *See Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) ("The FAA applies to all contracts involving interstate commerce."); Reply at 2. *See generally* Resp. As discussed above, where a party moves to compel arbitration, the FAA directs courts to "hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed in arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The Supreme Court has held that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' ***such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.*** " *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (citation omitted) (emphasis added). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Id*.

Chief Judge Cecilia M. Altonaga recently had occasion to interpret the arbitration provision within T-Mobile's T&Cs in connection with a similar case involving alleged "SIM-swapping" and, after noting that the T&Cs explicitly incorporate the AAA's delegation rules, found as follows:

> Controlling precedent permits only one conclusion here. The Eleventh Circuit has repeatedly held that incorporating the AAA rules into an arbitration agreement "clearly and unmistakably evince[s] an intent to delegate questions of arbitrability." *JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) (alteration added); *see also Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233–34 (11th Cir. 2018); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005). Consequently, "[b]y incorporating the AAA Rules," including Rule 14, "into their agreement," Plaintiff and Defendant "clearly and unmistakably agreed that the arbitrator should decide" gateway arbitrability issues. *Terminix Int'l*, 432 F.3d at 1332 (alterations added; collecting cases).

*Mendez v. T-Mobile USA Inc.*, Case No. 1:21-cv-23545-CMA, ECF No. 27, at 7 (S. D. Fla. Jan. 10, 2022) (hereinafter, "*Mendez* Order") (internal citations altered). Chief Judge Altonaga enforced the arbitration agreement after finding the plaintiff's arguments attacking the T&Cs were without merit for the purposes of deciding whether to compel arbitration because such arguments are not directed to the delegation provision. *Id.* at 8 (citing *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015)). The Court agrees with Chief Judge Altonaga's reasoning and finds it applicable to this case.

Here, as in *Mendez*, the T&Cs incorporate the AAA's arbitral rules, which state:

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

> (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

Moon Decl., Ex. A, at 17. "The Eleventh Circuit repeatedly held that incorporating the AAA rules into an arbitration agreement 'clearly and unmistakably evince[s] an intent to delegate questions of arbitrability.'" *Mendez* Order at 7 (citing *JPay*, 904 F.3d at 937; *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1233–34 (11th Cir. 2018); *U.S. Nutraceuticals*, 769 F.3d at 1311; *Terminix Int'l*, 432 F.3d at 1332). Thus, this Court concludes that the T&Cs, by way of incorporation of the AAA's arbitral rules, delegates questions of arbitrability to the arbitrator. *Id.*

"When 'an arbitration agreement contains a delegation provision—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review a challenge to that specific provision.'" *Jones*, 866 F.3d at 1264 (quoting *Parnell*, 804 F.3d at 1144). "Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole." *Id.* (citing *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016)). Here, Plaintiff's arguments attack virtually every aspect of the T&Cs—except the delegation provision. *See generally* Resp. Plaintiff's arguments relating to unconscionability, public policy, fraud, the FCC's purported fine of T-Mobile, the indemnity clause, enforceability of the arbitration provision, and his constitutional rights, do not speak to the enforceability of the delegation provision and, therefore, are all issues that must be decided by an arbitrator. *Jones*, 866 F.3d at 1264 (quoting *Parnell*, 804 F.3d at 1144); *see also Schein, Inc.*, 139 S. Ct. at 529 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.").

For these reasons, the Court finds that the above-captioned case should be stayed until arbitration proceedings have been completed. *Id*.

## IV. CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that:

1. Defendant's Motion to Compel Arbitration (ECF No. 11) is GRANTED;

2. The Parties are ORDERED to submit all claims asserted in the Complaint to arbitration in accordance with the Arbitration Agreement;

3. This case is hereby STAYED;

4. The Clerk of Court is INSTRUCTED to CLOSE this case;

5. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th day of January, 2022.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record